**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **TYLA M. NEWBOLD,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:10-cv-959-PMW** |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

Before the court is Tyla M. Newbold's ("Plaintiff") appeal of Michael J. Astrue's ("Commissioner") final decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see id*. §§ 1381-1383f.  After careful consideration of the written briefs and the complete record, the court has determined that oral argument is unnecessary in this case.

## BACKGROUND

In April 2008, Plaintiff applied for DIB and SSI, alleging disability beginning on October 1, 2006.[1]  Plaintiff's applications were denied initially and upon reconsideration.[2]  In November

---

[1] *See* docket no. 6, Administrative Record ("Tr. ____") 137-46.

[2] *See* Tr. 76-80.

2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[3] and that hearing was held on March 6, 2009.[4]  On June 16, 2009, the ALJ issued a written decision concluding that Plaintiff was disabled from October 1, 2006, through November 1, 2007, but subsequently experienced medical improvement and was no longer disabled after November 2, 2007.[5]  In August 2010, the Appeals Council denied Plaintiff's request for review,[6] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On October 12, 2010, Plaintiff filed her complaint in this case, which was assigned to District Judge Dee Benson.[7]  The Commissioner filed his answer on January 13, 2011,[8] and the court received the Administrative Record the same day.[9]

On January 27, 2011, both parties consented to having a United States Magistrate Judge conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[10]  Consequently, the case was reassigned to

---

[3]  *See* Tr. 93-94.

[4]  *See* Tr. 33-75.

[5]  *See* Tr. 10-32.

[6]  *See* Tr. 1-5.

[7]  *See* docket no. 3.

[8]  *See* docket no. 5.

[9]  *See* docket no. 6.

[10]  *See* docket no. 9.

Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.[11]

Plaintiff filed her opening brief on March 25, 2011.[12]  After receiving an extension of time,[13] the Commissioner filed his responsive brief on May 2, 2011.[14]  Plaintiff filed her reply brief on May 27, 2011.[15]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084 (quotations and citation omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to

---

[11]  *See id.*

[12]  *See* docket no. 11.

[13]  *See* docket nos. 12-13.

[14]  *See* docket no. 14.

[15]  *See* docket no. 15.

3

provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits are denied.  If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . .  If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.  If not, the evaluation proceeds to the fourth step . . . ."  *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At

4

the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  "If the claimant is able to perform his previous work, he is not disabled."  *Williams*, 844 F.2d at 751.  If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability."  *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."  *Id*.  At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience."  *Id*.; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## ANALYSIS

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred:  (1) by concluding that Plaintiff experienced medical improvement, (2) in evaluating the opinions of one of Plaintiff's treating sources,[16] (3) in evaluating the credibility

---

[16]  Plaintiff's briefs combine the first and second arguments.  As noted by the Commissioner, by combining those two arguments, Plaintiff has conflated two distinct issues. The court will address the two issues separately here.

of Plaintiff's subjective complaints, and (4) by posing an incomplete hypothetical to the vocational expert ("VE").  The court will address those arguments in turn.

### I.  Medical Improvement

As noted above, the ALJ concluded in his written decision that Plaintiff was disabled from October 1, 2006, through November 1, 2007, but subsequently experienced medical improvement and was no longer disabled after November 2, 2007.  Plaintiff argues that the ALJ erred by determining that Plaintiff experienced medical improvement as of November 2, 2007.

Under the relevant regulations, there are separate multi-part tests for DIB and SSI that are used to determine whether an individual's disability ends because of medical improvement.  *See* 20 C.F.R. §§ 404.1594(f)(1)-(8); 416.994(b)(5)(i)-(vii).  In many respects, the two tests require identical determinations.  One determination required by both tests is whether there is substantial evidence demonstrating that the individual has experienced medical improvement as defined by the relevant regulations.  *See* 42 U.S.C. §§ 423(f)(1)(A); 1382c(a)(4)(A)(i)(I); 20 C.F.R. §§ 404.1594(f)(3); 416.994(b)(5)(ii).  Plaintiff challenges only that single determination under both tests.

Medical improvement is defined under the relevant regulations as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i); *see also id.* §§ 404.1594(b)(7), 416.994(b)(1)(vii).  In this case, because there was no prior favorable decision, and because the ALJ determined that there was a closed period of disability, the comparison point is the onset

6

date of disability.  *See* Social Security Administration Program Operations Manual System § DI 28010.105(D)(3) (providing that the onset date is used as the comparison point when there is a closed period of disability).

In his decision, the ALJ noted the following evidence concerning Plaintiff's medical improvement:  at the administrative hearing, Plaintiff testified that her condition had improved in 2008 and improved even more in 2009;[17] Plaintiff had seen a physician in February 2008 and, during that visit, the physician noted that Plaintiff was doing very well on her medication regime, had lost 40 pounds, admitted she was more active, and was thinking about going back to work;[18] in June 2008, an examination by a physician revealed normal results with respect to fibromyalgia and chronic fatigue syndrome with the exception of diffuse, mild tenderness;[19] in June 2008, after a one-year gap in treatment, Plaintiff reported to Dr. Sean McMillan ("Dr. McMillan") that she was sleeping better after beginning use of a C-PAP machine;[20] and in August 2008, Plaintiff reported to Dr. McMillan that she was interested in going to school and getting a job in the not too distant future.[21]  The court concludes that this constitutes substantial evidence supporting the ALJ's determination that Plaintiff experienced medical improvement.

---

[17]  *See* Tr. 50, 60.

[18]  *See* Tr. 343.

[19]  *See* Tr. 324.

[20]  *See* Tr. 261.

[21]  *See* Tr. 240.

To the extent that Plaintiff attempts to reargue the weight of the evidence before the ALJ on this issue, the court notes that such a tactic is futile on appeal because it is not this court's role to reweigh the evidence before the ALJ.  *See Madrid*, 447 F.3d at 790.  Indeed, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).  From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions.  *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)).

The court has determined that the evidence relied upon by the ALJ constitutes substantial evidence to support the ALJ's conclusion that Plaintiff experienced medical improvement. Accordingly, the court concludes that the ALJ did not err by concluding that Plaintiff experienced medical improvement after November 2, 2007.

## II.  Treating Source Opinion

Plaintiff argues that the ALJ failed to properly evaluate the opinions of one of Plaintiff's treating sources, Dr. McMillan.

> In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight.  To make this determination, the ALJ . . . must first consider whether the opinion is well[ ]supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well[ ]supported, he must then confirm that the opinion is consistent with other

substantial evidence in the record.  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §§ 404.1527 and 416.927].  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted) (sixth alteration in original); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).  An ALJ is not required to discuss every factor set forth in the relevant regulations.  *See Oldham*, 509 F.3d at 1258 (stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review").

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*, *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.

9

In this case, because the ALJ concluded that Dr. McMillan's opinions concerning Plaintiff's condition after November 2, 2007, were entitled to diminished weight, it is implicit that the ALJ also viewed those opinions as not being entitled to controlling weight. Accordingly, the court turns to the deference and weight the ALJ gave to Dr. McMillan's opinions. *See Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).

In reaching his determination about Dr. McMillan's opinions, the ALJ relied on proper factors. The ALJ properly relied upon the fact that Dr. McMillan's conclusions indicated extreme limitations that were not supported by other objective evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Plaintiff contends that the ALJ failed to identify which record evidence conflicted with Dr. McMillan's opinions. That contention fails. While it is true that the ALJ did not specifically identify that record evidence in the portion of his decision concerning Dr. McMillian's opinions, he explicitly referenced the portion of his decision in which he discussed the medical evidence. A review of that portion of the ALJ's decision[22] demonstrates that the ALJ discussed substantial evidence in the record that was inconsistent with the extreme limitations contained within Dr. McMillan's opinions.

The ALJ also properly relied upon the fact that the extreme limitations expressed by Dr. McMillan were inconsistent with both Plaintiff's activities of daily living and one of Dr. McMillan's own reports. *See id.* §§ 404.1527(c)(4); 416.927(c)(4). Plaintiff asserts that the ALJ failed to identify the inconsistencies between Dr. McMillan's opinions and Plaintiff's activities

---

[22] *See* Tr. 26-28.

10

of daily living.  Although it is true that the ALJ did not identify Plaintiff's activities of daily

living in the portion of his decision concerning Dr. McMillan's opinions, a review of another part

of the decision reveals an extensive discussion of Plaintiff's activities of daily living.[23]  Further, a

review of a January 2009 report from Dr. McMillan does indeed reflect that Plaintiff reported

that she was able to take care of herself and perform her activities of daily living.[24]

As a final matter on this issue, the court notes that much of Plaintiff's argument appears

to be directed at the weight of the evidence before the ALJ.  As noted above, that tactic is futile

on appeal.  *See, e.g., Oldham*, 509 F.3d at 1257; *Madrid*, 447 F.3d at 790; *Rutledge*, 230 F.3d at

1174; *Eggleston*, 851 F.2d at 1247.

For these reasons, the court concludes that the ALJ did not err in his evaluation of Dr.

McMillan's opinions.

### III.  Credibility

Plaintiff argues that the ALJ erred in evaluating the credibility of Plaintiff's subjective

complaints.  In general, "[c]redibility determinations are peculiarly the province of the finder of

fact, and [this court] will not upset such determinations when supported by substantial evidence."

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although

credibility determinations "should be closely and affirmatively linked to substantial evidence,"

---

[23]  *See* Tr. 25-27.

[24]  *See* Tr. 272.

11

*id.* (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor

recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Social Security Ruling ("SSR") 96-7p clarifies the standards an ALJ must apply when

evaluating the credibility of an individual's statements, including his or her allegations of pain.

*See* SSR 96-7p. In addition to the objective medical evidence, an ALJ should consider the

following factors when assessing the credibility of an individual's statements:

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of the
    individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any
    medication the individual takes or has taken to alleviate
    pain or other symptoms;
5.  Treatment, other than medication, the individual receives or
    has received for relief of pain or other symptoms;
6.  Any measures other than treatment the individual uses or
    has used to relieve pain or other symptoms (e.g., lying flat
    on his or her back, standing for 15 to 20 minutes every
    hour, or sleeping on a board); and
7.  Any other factors concerning the individual's functional
    limitations and restrictions due to pain or other symptoms.

*Id.*; *see* 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Thompson v. Sullivan*, 987 F.2d 1482,

1489 (10th Cir. 1993).

In this case, the ALJ considered proper factors in reaching his determination that, overall,

Plaintiff's testimony about her disabling symptoms was not entirely credible. First, the ALJ

properly relied upon the fact that evidence of Plaintiff's daily activities was inconsistent with

Plaintiff's testimony about the degree of her limitations. *See* 20 C.F.R. §§ 404.1529(c)(3)(i),

416.929(c)(3)(i); SSR 96-7p. The ALJ noted that Plaintiff's own testimony and the medical

record established that Plaintiff was able to independently perform her activities of daily living, including caring for her own personal needs, doing household chores, cooking, using a computer, driving, shopping for groceries, reading, watching television, visiting with friends, attending church on a weekly basis, and attending church activities one night per week.[25]  Second, the ALJ properly noted that Plaintiff had been using only over-the-counter pain medications, experienced no medication side effects, required no hospital visits or surgery for her physical problems, undergone no physical therapy, used no assistive devices to ambulate, and undergone no mental health treatment.[26]  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(vi), 416.929(c)(3)(iv)-(vi); SSR 96-7p. Third, the ALJ properly relied upon the fact that Plaintiff had not sought or received medical treatment from Dr. McMillian from April 2007 to June 2008, a gap of approximately fourteen months.[27]  *See* 20 C.F.R. §§ 404.1529(c)(3)(v)-(vi), 416.929(c)(3)(v)-(vi); SSR 96-7p.  Finally, the ALJ properly considered the fact that Plaintiff had not been compliant with her doctors' orders concerning exercise levels and medication dosages.[28]  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(vi), 416.929(c)(3)(iv)-(vi); SSR 96-7p.

---

[25]  *See* Tr. 50-51, 60, 69, 321-22, 326.

[26]  *See* Tr. 27-28.

[27]  *See* Tr. 241, 261.

[28]  *See* Tr. 240, 262.

Again, the court notes that much of Plaintiff's argument on this issue appears to be directed at the weight of the evidence before the ALJ. As previously indicated, that tactic is unavailing on appeal. *See, e.g., Oldham*, 509 F.3d at 1257; *Madrid*, 447 F.3d at 790; *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.

The ALJ articulated sufficient reasoning and relied upon proper factors in determining that, overall, Plaintiff's testimony was not entirely credible. Furthermore, the court concludes that the ALJ's determination is "closely and affirmatively linked to substantial evidence." *Kepler*, 68 F.3d at 391 (quotations and citation omitted). Accordingly, the court concludes that the ALJ did not err in reaching his determination about Plaintiff's credibility.

### IV.  VE Hypothetical

Finally, Plaintiff argues that the ALJ erred by giving a hypothetical to the VE that did not reflect all of Plaintiff's limitations. Plaintiff essentially asserts that the hypothetical given to the VE should have included the limitations expressed by Dr. McMillan. That argument fails. The court has already concluded that the ALJ did not err in his treatment of Dr. McMillan's opinions. Accordingly, the ALJ was not required to include the limitations expressed by Dr. McMillan in the hypothetical provided to the VE. *See Qualls*, 206 F.3d at 1373 ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

14

## CONCLUSION AND ORDER

The court concludes that all of Plaintiff's arguments fail.  Accordingly, **IT IS HEREBY ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 9th day of March, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge